UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEANTE WILLIAMS, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22-CV-256-JD-JEM |
| HYATTE, et al., | |
| Defendants. | |

OPINION AND ORDER

Deante Williams, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Williams alleges he was stabbed by another inmate on September 2, 2021, which resulted in him being hospitalized for two weeks. When he was brought back to the Miami Correctional Facility, he was initially placed in the infirmary but was later transferred to a restricted housing unit. According to Williams, the cell's window had a metal plate over it, so he couldn't see outside. Also, the cell didn't have WiFi, so he was unable to use his tablet or order commissary items including clothes or a new

toothbrush. He claims Lt. Cartie was supposed to wash his bedding every two weeks, but it wasn't done for "months," and his clothes were "hardly" ever washed. ECF 1 at 3. He was moved to a different cell in the restricted housing unit, but that cell still had a metal plate over the window and the intercom didn't work. The new lieutenant in charge there, Lt. Myers, also didn't change his sheets for "months." *Id*. at 4.

On September 30, 2021, he was informed he was going to be put on the list for a transfer. Later, when he asked Caseworker Croft why he was still in the restricted housing unit, he was told that the facility didn't want him to be in the general population because of concerns related to his safety after the stabbing. Williams believes he should not have been placed in the restricted housing unit at all because he didn't do anything wrong. He has sued Warden Hyatte, Lt. Cartie, Caseworker Croft, and Lt. Myers for monetary damages.

Of note, on July 1, 2022, approximately three months after he filed this lawsuit, Williams filed a notice of change of address stating he had been transferred from the Miami Correctional Facility to the Pendleton Correctional Facility on May 11, 2022. ECF 7.

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit has "concluded that inmates have no liberty interest in avoiding

2

transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); *Healy v. Wisconsin*, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing *Sandin*, 515 U.S. at 486).

Although later cases have questioned the conclusion that placement in nonpunitive segregation can "*never* implicate a liberty interest," *see Williams v. Brown*, 849 Fed. Appx. 154, 157, n.3 (7th Cir. 2021) (emphasis added), timing plays a part in the analysis, even when conditions are significantly harsher. *See e.g. Earl v. Racine County Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (five days is generally "too short a time to trigger due-process protection"); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 & nn.2–3 (7th Cir. 2009) (collecting cases that held segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005)

3

(recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

Here, according to his complaint plus the later filed notice of change of address, Williams spent approximately eight and a half months in two different cells in the restricted housing unit following his stabbing by another inmate. Although the length of time he spent in the restricted housing unit may implicate a protected liberty interest, Williams does not plausibly allege the conditions there were severe enough to be classified as an "atypical and significant hardship" on him compared to ordinary prison life." *Sandin*, 515 U.S. at 484; *see also Marion*, 559 F.3d at 697 ("combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period" are both relevant to triggering due process concerns) (emphasis in original). Williams alleges only that there was a metal plate over the windows of his cells, that he was not able to order items off commissary or use his tablet, that his second cell didn't have an intercom, and that his clothes and bedding were not washed often. These allegations, without more, are insufficient to state a viable Fourteenth Amendment due process claim. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

Even if an inmate's placement itself does not trigger any due process concerns, he may still have a claim regarding the conditions of his confinement under the Eighth Amendment.[1] "Although the Constitution does not mandate comfortable prisons, it does mandate humane ones." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (internal quotation marks and citation omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). The Eighth Amendment requires inmates to be provided with "humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Thomas*, 2 F.4th at 719 (quoting *Farmer*, 511 U.S. at 832). They must also be provided with "'reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities.'" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To satisfy this standard, "the official must have actually known

---

[1] *See Townsend*, 522 F.3d at 772-73 ("The issue of cell conditions in TLU is best analyzed as a claim brought under the Eighth Amendment.").

5

of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

As noted above, Williams alleges there was a metal plate over the window in his cells, that he could not purchase items off commissary or use his tablet, and that his clothes and bedding were not washed regularly.[2] He also mentions the intercom in one of his cells was broken, and he feared he would not be able to summon help without it. However, he does not allege he suffered any emergency while in the restricted housing unit that would have required the use of an intercom. Even viewed as a whole, these allegations do not plausibly demonstrate that the conditions were sufficiently serious to deny him life's necessities. *See Bissessur*, 581 F.3d at 602; *Swanson*, 614 F.3d at 403; *see also Smith v. Dart*, 803 F.3d 304, 313–14 (7th Cir. 2015) (inmate's claim of a pest infestation was insufficient to state a claim because the court was "left in the dark as to how extensive the infestations are and how the pests affect him," and his claim of lack of outdoor recreation failed because he did not allege his movements were totally restricted). Therefore, he has not stated a plausible Eighth Amendment claim.

This complaint does not state any claims for which relief can be granted. If he believes he can state a claim based on (and consistent with) the events described in this complaint, Williams may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at

---

[2] Of note, he does not provide any details about the condition of his bedding or clothes—he does not allege either were exceptionally dirty or that they needed to be washed for a specific health reason. Moreover, he does not plausibly allege the metal plate over the windows interfered with the ventilation in his cells.

6

least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) GRANTS Deante Williams until **February 17, 2023**, to file an amended complaint; and

(2) CAUTIONS Deante Williams if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on January 10, 2023

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

7